# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# LAFAYETTE DIVISION

| | |
|---|---|
| **CHARLES JACKSON, ET AL** | **CIVIL DOCKET NO. 6:21-CV-02117** |
| **VERSUS** | **JUDGE DAVID C. JOSEPH** |
| **STATE FARM FIRE & CASUALTY COMPANY** | **MAGISTRATE JUDGE DAVID J. AYO** |

## MEMORANDUM RULING

Plaintiffs Charles and Erica Jackson ("Plaintiffs") filed suit against their homeowners' insurance carrier, State Farm Fire and Casualty Company ("State Farm" or "Defendant"), on July 7, 2021, pursuant to this Court's diversity jurisdiction. [Doc. 1, ¶ 4]; [Doc. 42, p. 2]. Plaintiffs' Complaint asserts indemnification claims against State Farm arising from damage caused to their home by Hurricanes Laura and Delta. [Doc. 1, ¶¶ 8, 14].

Seven motions are now before the Court: (i) two Motions in Limine filed by Plaintiffs; (ii) four Motions in Limine filed by Defendant; and (iii) one Motion for Summary Judgment filed by Defendant. *See* [Docs. 37, 38] (Plaintiffs' Motions in Limine); [Docs. 29, 41, 46, 47] (Defendant's Motions in Limine); [Doc. 28] (Defendant's Motion of for Summary Judgment). After careful consideration, and for the reasons set forth below, the Court DENIES all Motions.

## BACKGROUND

### I. Facts

Plaintiffs are homeowners residing in Lafayette, Louisiana. [Doc. 1, ¶ 6]. On August 27, 2020, Hurricane Laura struck southern Louisiana and allegedly caused

extensive damage to Plaintiffs' home. [Doc. 8, ¶ 8]. This damage was exacerbated on October 9, 2020, when Hurricane Delta made landfall. [Doc. 8, ¶ 19].

At the time of both storms, Plaintiffs' home was covered by an insurance policy (the "Policy") issued by State Farm.[1] [Doc. 8, ¶ 7]. Plaintiffs timely notified Defendant of their loss and, on October 13, 2020, State Farm sent an adjustor to Plaintiffs' home. [Doc. 8, ¶ 12]. After inspecting the property, the adjustor submitted a report detailing damages with a replacement cost value of $30,471.93. *Id.*; [Doc. 1, ¶ 12]. However, after depreciating Plaintiffs' damages and applying a $22,309.21 deductible, Defendant found that Plaintiffs were not entitled to a payout under the terms of the Policy. [Doc. 1, ¶ 12]; [Doc. 8, ¶ 12].

## II. Procedural History

Plaintiffs filed suit on July 21, 2021, alleging, *inter alia*, that: (i) Defendant breached the Policy by "fail[ing] to timely tender adequate insurance proceeds;" and (ii) Defendant's handling of Plaintiffs' claim was "arbitrary, capricious, and without probable cause," making Defendant liable for "bad faith penalties" under La R.S. §§ 22:1892 and 22:1973. [Doc. 1, ¶¶ 31, 39].

On January 19, 2023, Defendant filed: (i) a Motion for Summary Judgment, which seeks the dismissal of "certain items of Plaintiffs' damages;" and (ii) a Motion in Limine, which seeks to exclude the opinions and testimony of Parker Alleman, one

---

[1] Under the terms of the Policy, Defendant agreed to compensate Plaintiffs for "accidental physical loss" to their home, but not for any "diminution in value." [Doc. 40-5, p. 32].


of Plaintiffs' experts. [Docs. 28, 29]. Plaintiff has opposed both Motions. [Docs. 32, 33].

On February 6, 2023, Plaintiffs filed: (i) a Motion in Limine seeking to exclude the testimony and opinions of Danny Smith, one of Defendant's experts; and (ii) a Motion in Limine seeking to exclude the testimony and opinions of Matthew Richardson, another of Defendant's experts. [Docs. 37, 38]. Defendant has opposed both Motions in Limine. [Docs. 62, 68].

On February 6, 2023, Defendant filed: (i) a Motion in Limine to exclude evidence of damage to Plaintiffs' pool; (ii) a Motion in Limine to exclude evidence of damage to the roof of Plaintiffs' gazebo; and (iii) a Motion in Limine to exclude evidence relating to the replacement cost value of Plaintiffs' damages. [Docs. 46, 47, 41]. Plaintiff opposes all three Motions in Limine. [Docs. 64, 63, 69]. All seven Motions are now ripe for ruling. Trial in this matter is set to commence on March 6, 2023.

## LAW AND ANALYSIS

### I. Motions in Limine

Relevant evidence is admissible unless "barred by the Constitution, a federal statute, the Federal Rules of Evidence, or other rules prescribed by the Supreme Court." *E.Z. Aces Gaming Inc. v. Penn-Am. Ins. Co.*, 2022 WL 17254889, at *1 (W.D. La. Nov. 28, 2022) (citing Fed. R. Evid. 402). When ruling on motions in limine, the Court "maintains great discretion [as to] evidentiary determinations." *Parker v. John W. Stone Oil Distributors, L.L.C.*, 2019 WL 5212285, at *2 (E.D. La. Oct. 16, 2019); *see also Ohler v. United States,* 529 U.S. 753, 758 n.3 (2000) (noting that rulings on

motions in limine "are not binding on the trial judge, and the judge may always change his mind during the course of a trial."); *Thomas v. Ameritas Life Ins. Corp.*, 34 F.4th 395, 399 (5th Cir. 2022) ("The grant or denial of a motion in limine is considered discretionary, and thus will be reversed only for an abuse of discretion and a showing of prejudice."). Evidence should only be excluded in limine when the evidence is "clearly inadmissible on all potential grounds." *E.Z. Aces Gaming Inc.* 2022 WL 17254889, at *1; *accord*, *Jackson v. DeJoy*, 2021 WL 4940998, at *1 (E.D. La. Oct. 22, 2021).

### A. Expert Evidence

Although state law governs the merits of this case, federal law determines the admissibility of expert testimony. *Huss v. Gayden*, 571 F.3d 442, 452 (5th Cir. 2009). Under the Federal Rules of Evidence, "district courts are assigned a gatekeeping role to determine the admissibility of expert testimony." *United States v. Valencia*, 600 F.3d 389, 424 (5th Cir. 2010). Thus, a district court must ensure that only "[e]xperts qualified by knowledge, skill, experience, training or education … present opinion testimony to the jury." *Williams v. Manitowoc Cranes, L.L.C.*, 898 F.3d 607, 623 (5th Cir. 2018) (citing *id.*) (internal quotations omitted).

Expert testimony must be "both relevant and reliable before it may be admitted. *Valencia,* 600 F.3d at 424. In this context, "[e]vidence is relevant if it assists the trier of fact to understand the evidence or to determine a fact in issue." *United States v. Ebron*, 683 F.3d 105, 139 (5th Cir. 2012). Reliability, in turn, depends upon whether "the reasoning and methodology underlying the [expert's] testimony is valid and can be reliably applied to the facts of the case." *Valencia*, 600

F.3d at 424; *see also Ebron*, 683 F.3d at 130 (expert evidence is reliable "where it [is] based on the expert's specialized knowledge, training, experience, and first-hand observations while supported by solid evidence in the scientific community."). The proponent of the expert testimony bears the burden of proving its ultimate admissibility by a preponderance of the evidence. *E.Z. Aces Gaming Inc. v. Penn-Am. Ins. Co.*, 2022 WL 17254889, at *2 (W.D. La. Nov. 28, 2022) (citing *Mathis v. Exxon Corp.*, 302 F.3d 448, 459–60 (5th Cir. 2002)).

### i. Testimony of Parker Alleman

Parker Alleman is a licensed general contractor that specializes in roof installation and repair. [Doc. 32-3, pp. 46–47]. Plaintiffs have proffered Mr. Alleman as an expert in contracting and intend to use his testimony to demonstrate: (i) the causal link between the hurricanes and certain damage to Plaintiffs' home; and (ii) the sums necessary to repair that damage. [Doc. 32-1, p. 3] (Plaintiffs' Rule 26 disclosures); [Doc. 39-1, p. 7]. Defendant, however, contends that Mr. Alleman "lacks the knowledge, skill, experience, and training to qualify him as an expert as to damages or causation" because he is not a licensed public adjustor within the meaning of Louisiana Revised Statutes § 22:1693. [Doc. 29-1, pp. 3–5]. Defendant thus seeks the exclusion of "any evidence and expert or opinion testimony from Parker Alleman in its entirety[.]" *Id.* at p. 9.

Defendant made a similar argument in *Flair v. State Farm Fire & Casualty Co.,* 2009 WL 10679785, at *2 (E.D. La. Feb. 3, 2009). There, as here, Defendant contended that "[b]ecause the state has not approved [plaintiffs' expert] as an

adjustor … [the] Court should not allow him to testify about the damage he observed at plaintiffs' property." *Id.* That court denied Defendant's motion, holding:

> The Court concludes that [plaintiffs' expert's] public adjuster licensing status is not dispositive of whether he may provide expert opinion testimony at trial. Though his lack of a license may preclude [him] from performing certain tasks in Louisiana–a judgment this Court need not presently make–it does not automatically render him unqualified to provide expert testimony.

*Id.* at *2 (cleaned up).

Other cases considering comparable arguments have reached a similar conclusion. *See, e.g., Horton v. Fisher,* 2021 WL 4239974, at *3 (M.D. La. Sept. 17, 2021) (unlicensed engineer permitted to testify regarding car accident reconstruction); *United States v. 9.345 Acres of Land, More or Less, Situated in Iberville Par., Louisiana*, 2018 WL 11421289, at *4 (M.D. La. Mar. 29, 2018); *Alleyne v. Selective Ins. Co. of the S.E..,* 2015 WL 500885, at *3 (E.D. La. Feb. 5, 2015*); Messer v. Transocean Offshore USA, Inc.*, 2005 WL 283294, at *2 (E.D. La. Feb. 3, 2005) (finding the defendant's argument "wholly without merit" because the licensing statute at issue" regulate[d] the actual provision of rehabilitation counseling services, not expert testimony."). The Court agrees and will not preclude Mr. Alleman's testimony solely because he is not a public adjuster. Plaintiffs may tender Mr. Alleman to the Court subject to the normal standards and procedures for qualifying an expert witness to give opinion testimony.[2] Defendant's first Motion in Limine [Doc. 29] is therefore denied.

---

[2] The record indicates that Mr. Alleman is a licensed contractor with approximately 16 years of experience in the construction industry. [Doc. 32-2, p. 18]; [Doc. 52-6] (Mr. Alleman's curriculum vitae). Although Defendant's Motion makes much of the fact that Mr. Alleman is

### ii. Testimony of Tobias Patch

Plaintiffs have also designated Tobias Patch as an expert in insurance adjusting. [Doc. 39, p. 7] (Plaintiff's Pretrial Statement). After inspecting Plaintiffs' property in November 2022, Mr. Patch prepared an estimate of the damages sustained by the home that included damage to Plaintiffs' pool. [Doc. 32-8, p. 81]. In his deposition, however, Mr. Patch testified that he could not definitely link the pool damage to Hurricanes Laura and Delta, explaining that he based his pool damage solely upon "Mr. Jackson's very clear and descriptive explanation of how the pool was prior to the event … and all of the different things he tried to do to fix the problem he immediately said he noticed after the event."[3] *Id.* at pp. 83, 88. Defendant's second Motion in Limine argues that "any evidence of Plaintiffs' pool damages" should be excluded because Mr. Patch "did not use any reliable methodology to determine whether [damage to the pool] was related to the storm[.]" [Doc. 46-1, p. 8].

The Supreme Court has held that an expert witness "is permitted wide latitude to offer opinions, including those that are not based on firsthand knowledge or observation." *In the Matter of M&M Wireline & Offshore Servs., LLC,* 2016 WL 4681196, at * 6 (E.D. La. Sept. 7, 2016) (citing *Daubert v. Merrill Dow Pharm.*, 509 U.S. 579, 592 (1993)); *see also Cromwell v. Wal-Mart Stores, Inc.,* 46 F. App'x 733, at *2 (5th Cir. 2002) (unpublished) ("[E]xpert are permitted to assume the underlying

---

not a licensed public adjustor, *see generally* [Doc. 29-1], Defendant does not dispute that Mr. Alleman is qualified to testify as an expert in contracting.

[3] Mr. Patch seemingly attributes the pool damage to chemicals coating the shingles that fell in Plaintiffs' pool. *See* [Doc. 32-8, p. 83].

facts that form the basis for the opinions."). Because an expert's opinion may permissibly rest upon "inadmissible evidence" and "hypothetical facts," the fact that Mr. Patch predicated his pool estimate upon representations made by Mr. Jackson does not make Mr. Patch's estimate inherently unreliable. *Gonzalez v. Sea Fox Boat Co. Inc.*, 2022 WL 3704211, at *3 (W.D. La. Aug. 26, 2022) (citing *Bryan v. John Bran Div. of FMC Corp.*, 566 F.2d 541, 545 (5th Cir. 1978)); *see also Dunmiles v. Jubilee Towing, LLC,* 2017 WL 1212091, at *4 (E.D. La. Apr. 3, 2017) (considering similar facts and noting that "[defendant's] concerns can be addressed through the traditional method–cross examination."); *Cervante v. Collier*, 2019 WL 6727872, at *2 (W.D Tex. Dec. 11, 2019) ("Challenges to the basis of an expert's opinions generally go to the weight of the evidence … [and] flaws, inaccurate conclusions, omissions and/or exaggerations—while perfect fodder for a strenuous cross-examination—are not generally grounds for prohibiting the witness' testimony.") (cleaned up).

Here, Defendant's concerns about the methodology and sources relied upon by Mr. Patch in attributing Plaintiff's pool damages to the hurricanes may be fully addressed during his cross-examination at trial. Defendant's second Motion in Limine [Doc. 46] regarding damages to Plaintiffs' pool is denied.

### iii. Testimony of Danny Smith

Defendant has proffered Matthew Richardson and Danny Smith as experts in engineering. [Doc. 42, pp. 12–13] (Defendant's Pretrial Statement). Defendant intends to present testimony from both experts, "regarding [their] investigation of damages … and [their] findings regarding causation." *Id.* Although both witnesses are licensed professional engineers in multiple states, Mr. Richardson is not licensed

in Louisiana. [Doc. 37-2, pp. 30, 84]; [Doc. 37-3, pp. 20, 31–32]. Additionally, although both witnesses have been retained by Defendant for the purposes of this litigation, Mr. Smith has not physically inspected the damage sustained by Plaintiffs' home, relying instead upon evidence gathered by Mr. Richardson. [Doc. 37-2, pp. 23, 28–30]; [Doc. 37-3, pp. 52, 75].

Plaintiffs' first Motion in Limine argues that Mr. Smith's testimony should be excluded because "[h]is testimony is not based on sufficient facts or data, nor is it based on reliable principles or methods." [Doc. 37-1, p. 7]. More specifically, Plaintiffs urge that Mr. Smith's opinions unreliable because: (i) he predicated them upon reports and photographs taken by Mr. Richardson following a visual inspection of Plaintiffs' home; but (ii) Mr. Smith never visited Plaintiffs' home himself.[4]

As noted above, the Supreme Court has held that an expert witness "is permitted wide latitude to offer opinions, including those that are not based on firsthand knowledge or observation." *In the Matter of M&M Wireline & Offshore Servs., LLC,* 2016 WL 4681196, at *6 (E.D. La. Sept. 7, 2016) (citing *Daubert v. Merrill Dow Pharm.*, 509 U.S. 579, 592 (1993)); *see also Cromwell v. Wal-Mart Stores, Inc.,* 46 F. App'x 733, at *2 (5th Cir. 2002) (unpublished). Here, Mr. Smith's opinions are not unreliable simply because they are based upon evidence gathered by Mr. Richardson rather than his own inspection of Plaintiffs' home. *See, e.g., E.Z. Aces*

---

[4] Plaintiffs have also argued that Mr. Smith and Mr. Richardson will provide cumulative testimony. *See* [Doc. 37-1, pp. 8–9]. The Court recognizes that Mr. Smith and Mr. Richardson are both civil engineers who, at trial, will be called to explain "[their] investigation of damages ... and [their] findings regarding causation." [Doc. 42, pp. 12–13]. To the extent that their testimony is cumulative, Plaintiffs may reurge this objection at trial.

*Gaming Inc. v. Penn-Am. Ins. Co.*, 2022 WL 17254889, at *2 (W.D. La. Nov. 28, 2022) (noting that an expert witness may testify even when "he lacks personal knowledge of the events underlying the suit"); *Holly v. U.S. Shipping Corp.*, 2021 WL 6335339, at *2 (E.D. La. Dec. 6, 2021) ("If plaintiff's expert testimony is weak because it was the product of a review of photographs rather than a physical inspection, that can be brought out on cross-examination, and the jury can give it the weight it deserves."); *Anderson v. Allstate Ins. Co.*, 2021 WL 292440, at *11 (M.D. La. Jan. 28, 2021) ("An expert can rely upon otherwise inadmissible evidence as long as it is of a type 'reasonably relied on by other experts in the particular field.'"). Because Plaintiffs do not provide any additional evidence indicating that Mr. Smith's opinions are unreliable, Plaintiffs' first Motion in Limine [Doc. 37] is denied.

### iv. Testimony of Matthew Richardson

Plaintiffs' second Motion in Limine contends that Mr. Richardson's testimony should be excluded because: (i) Mr. Richardson formed his opinions using only "observations and experience" rather than "specialized knowledge [and] methodologies]; and (ii) Mr. Richardson inspected the exterior of Plaintiffs' home but did not inspect its roof or interior.[5] [Doc. 38-1, pp. 7–9]. Neither argument is sufficient to preclude his testimony.

---

[5] Plaintiffs also argue that Mr. Richardson cannot provide expert testimony because he is not a licensed engineer in the state of Louisiana. *See* [Doc. 38-1, pp. 3, 5–7] ("Mr. Richardson is holding himself out as a Licensed Louisiana Professional Engineer, apparently unaware that Louisiana law criminalizes such conduct."). This argument parallels Defendant's argument regarding Mr. Alleman's qualifications and it is unpersuasive for the same reasons. *Supra, pp. 5-7; see also, Jeanes v. McBride*, 2019 WL 13221180, at *3–4 (W.D. La. June 6, 2019), *supplemented*, 2019 WL 2622460 (W.D. La. June 18, 2019); *Anderson v. Allstate Ins. Co.*, 2021 WL 292440 (M.D. La. Jan. 28, 2021).

First, an expert may provide testimony "based mainly on personal observations, professional experience, and training[.]" *Miciotto v. Hobby Lobby Stores, Inc.,* 2021 WL 219089, at *4–5 (W.D. La. Jan. 21, 2021); *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 156 (1999) ("[N]o one denies that an expert might draw a conclusion from a set of observations based on extensive and specialized experience."); *Young v. Am. Eagle Lines*, 2007 WL 9710791, at *3 (M.D. La. Feb. 14, 2007) (an expert's "failure to conduct specific testing, perform calculations, and/or review additional materials are factors for the jury to consider when weighing the evidence."); *Kirkland v. Marriott Int'l, In*c., 416 F. Supp. 2d 480, 484–85 (E.D. La. 2006).  An expert may also "testif[y] about matters outside his personal knowledge" when a matter falls within "his experience, training, or education."  *Wellogix, Inc. v. Accenture, L.L.P.*, 716 F.3d 867, 882 (5th Cir. 2013) (internal quotations omitted). Here, the record indicates that Mr. Richardson predicated his opinions upon his education, his experience as an engineer, and a personal inspection of the exterior of Plaintiffs' home.  *See generally* [Doc. 37-4]; *see also* [Doc. 37-3, pp. 14, 50, 81–85].  The fact that Mr. Richardson did not use specialized testing to reach those opinions is not alone sufficient to preclude his testimony at trial.  Plaintiffs' second Motion in Limine [Doc. 38] regarding Mr. Richardson's testimony is therefore denied.

## B. Evidence of Damages

### i. Damages to the Roof of Plaintiffs' Gazebo

Defendant's third Motion in Limine argues that "any evidence at trial relating to the replacement of [Plaintiffs'] gazebo roof" should be excluded because "[Tobias]

Patch admitted that did not identify any damage to this roof at his inspection[.]"[6] [Doc. 47-1, pp. 2–3] (quoting Mr. Patch). This argument, however, disregards substantial portions of Mr. Patch's deposition testimony; although Mr. Patch indicated that he did not find any damage to the gazebo's shingles, he also unambiguously stated that the gazebo's roof decking sustained damage. [Doc. 32-8, p. 78] ("I didn't find specific damage to the shingles. I found damage underneath them to the deck boards below, but I didn't find any damage directly to the shingles, no."). Accordingly, Defendant's third Motion in Limine [Doc. 47] is denied.

### ii. Replacement Cost Value

Lastly, the Policy provides that Plaintiffs must "complete the actual repair or replacement of [their home] within two years after the date of loss" to receive the replacement cost value of their damages. [Doc. 41-1, pp. 2–3]. Plaintiffs do not dispute that they did not repair their home within the required timeframe – presumably due to their coverage dispute with State Farm. *See generally* [Docs. 41-7, 41-8]; *see also* [Doc. 41-7, p. 8] (where Mr. Jackson confirms his plans to "[wait] until [his] claim with State Farm resolves" before repairing his home). Defendant's fourth and final Motion in Limine argues that "the [estimates] provided by Plaintiffs' [experts] should be exclude entirely" because: (i) those estimates account for the

---

[6] Defendant's third Motion in Limine also relies quite heavily upon a single page of Mr. Jackson's deposition testimony. *See* [Doc. 47-4, p.3] (where Mr. Jackson states that the gazebo roof "is not damaged."); *see also* [Doc. 40-3, pp. 3, 5, 7] (citing same). Mr. Jackson's testimony, however, runs directly counter to the estimates of Mr. Alleman and Mr. Patch, both of whom have submitted estimates that include damage to the roof of Plaintiffs' gazebo. *See* [Docs. 63-1, p. 22]; [63-2, p. 15]. Defendant may address this issue with Mr. Jackson during his cross-examination at trial.

replacement cost value of Plaintiffs' repairs; but (ii) Plaintiffs are only entitled to the actual cash value of those repairs under the terms of the Policy.[7] [Doc. 41-1, p. 6].

Defendant's reasoning is unpersuasive. The Louisiana Third Circuit considered and rejected a similar argument in *Mason v. Shelter Mut. Ins. Co.*, 2016-135 (La. App. 3 Cir. 12/28/16), 209 So. 3d 860. There, as here, the provision at issue would have required the plaintiff to "perform and personally finance work in accordance with the policy terms, while [defendant] simultaneously denied coverage under that same policy. *Id.* at 867. Noting that the plaintiff "made specific proofs of loss," the court found that provision inapplicable on the basis of Louisiana Civil Code article 1772.[8] *Id.*

Courts in this district considering similar provisions have reached the same result. *See, e.g.*, *Touchet v. United Prop. & Cas. Ins. Co.*, 2022 WL 710621, at *2 (W.D. La. Mar. 9, 2022) ("The court will not allow [defendant] to prevent the jury from even considering its liability for repair or replacement costs merely because plaintiffs have not been able to reach that stage."); *Schumacher v. United Prop. & Cas. Ins. Co.*, 2022 WL 3330085, at *2 (W.D. La. Aug. 11, 2022) (denying summary judgment as to damages where plaintiffs argued "they [could not] start repair work because of the low amounts of payment that they have received thus far from [defendant]."); *Morris*

---

[7] The Policy defines the term "actual cash value" as "the estimated cost to repair or replace [Plaintiffs' home], less a deduction to account for pre-loss depreciation." [Doc. 41-1, p. 8].

[8] Louisiana Civil Code Article 1772 provides that "[a] condition is regarded as fulfilled when it is not fulfilled because of the fault of a party with an interest contrary to the fulfillment."

*v. United Prop. & Cas. Ins. Co.*, 2022 WL 16545666, at *2–3 (W.D. La. Oct. 28, 2022); *Jackson v. United Prop. & Cas. Ins. Co.*, 2022 WL 4391756 (W.D. La. Sept. 21, 2022) (denying summary judgment as to damages where defendant argued that "the jury should be limited to considering its liability only in terms of [actual cash value]."). Keeping with this line of cases, Defendant's fourth Motion in Limine [Doc. 41] is denied.

## II. Defendant's Motion for Summary Judgment

### A. Applicable Standard

A court should grant a motion for summary judgment when the pleadings in conjunction with affidavits and documentary evidence, "show that there is no dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56; *see also Celotex Corp v. Catrett*, 477 U.S. 317, 323–24 (1986). In applying this standard, the Court should construe "all facts and inferences in favor of the nonmoving party." *Deshotel v. Wal-Mart Louisiana, L.L.C.*, 850 F.3d 742, 745 (5th Cir. 2017); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) ("The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."). The party moving for summary judgment bears the burden of demonstrating that there is no genuine dispute of material fact as to issues critical to trial that would result in the movant's entitlement to judgment in its favor, including identifying the relevant portions of pleadings and discovery. *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995). If the movant fails to meet this burden, a court must deny the moving party's motion for summary judgment. *Id.*

If the movant satisfies its burden, however, the non-moving party must "designate specific facts showing that there is a genuine issue for trial." *Id*. (citing *Celotex*, 477 U.S. at 323). In evaluating motions for summary judgment, the court must view all facts in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). There is no genuine issue for trial – and a grant of summary judgment is warranted – when the record as a whole "could not lead a rational trier of fact to find for the non-moving party[.]" *Id*.

### B. Summary Judgment on Causation

State Farm seeks partial summary judgment on Plaintiffs' claims for damages to their roof deck, brick veneer, and stucco – alleging that Plaintiffs "have no causation evidence" to support their claims. [Doc. 28-1]. In addition to Parker Alleman and Tobias Patch (discussed above), Plaintiffs have also designated Arnulfo Escamilla as an expert in engineering. [Doc. 39, p. 7]. On September 16, 2022, Mr. Escamilla inspected the damage to Plaintiffs' home, including the damage sustained by Plaintiffs' brick veneer, roof decking, and stucco. *See generally* [Doc. 28-4]. Defendant's Motion for Summary Judgment rests on its contention that Plaintiffs "[lack] expert evidence establishing that Hurricanes Laura and Delta caused these items of damages" because Mr. Escamilla "identifie[d] [these] items of damages [as] unrelated to Hurricanes Laura and Delta." [Doc. 28-1, p. 3].

This argument misconstrues both Mr. Escamilla's deposition and the report he authored after inspecting Plaintiffs' property. *See generally* [Doc. 33-5] (Mr. Escamilla's report, which describes the damage to Plaintiffs' brick veneer, roof decking, and stucco before concluding that damage resulted from Hurricanes Laura

and Delta); *see also* [Doc. 32-6, p. 83] (where Mr. Escamilla states that the damage to Plaintiffs' stucco was ultimately "the wind that endured during either Laura or Delta."); *id.* at pp. 46–48 (where Mr. Escamilla explains the damage sustained by Plaintiffs' roof decking, concluding that damage was also precipitated "by winds of either Hurricanes Laura or Delta"); *id.* at pp. 83–84 (where Mr. Escamilla describes the damage to Plaintiffs' brick veneer and attributes it to "elastic racking" caused by hurricane winds). Defendant's Motion also ignores the testimony of Mr. Patch, who unequivocally attributed the damage to Plaintiffs' brick veneer, roof decking, and stucco to Hurricanes Laura and Delta. [Doc. 32-8, pp. 36–37, 39–41, 47–48, 54]. Given that material issues of fact remain, Defendant's Motion of Summary Judgment [Doc. 28] is denied.

## CONCLUSION

For the foregoing reasons,

IT IS HEREBY ORDERED that State Farm's MOTION FOR SUMMARY JUDGMENT [Doc. 28] is DENIED;

IT IS FURTHER ORDERED that State Farm's MOTION IN LIMINE to exclude the testimony of Parker Alleman [Doc. 29] is DENIED;

IT IS FURTHER ORDERED that State Farm's MOTION IN LIMINE to exclude evidence of damage to Plaintiffs' pool [Doc. 46] is DENIED;

IT IS FURTHER ORDERED that State Farm's MOTION IN LIMINE to exclude Plaintiffs' gazebo roof damage [Doc. 47] is DENIED;

IT IS FURTHER ORDERED that State Farm's MOTION IN LIMINE to exclude evidence of replacement cost value of Plaintiffs' damages [Doc. 41] is DENIED;

IT IS FURTHER ORDERED that Plaintiffs' MOTION IN LIMINE to exclude the testimony of Danny Smith [Doc. 37] is DENIED;

IT IS FURTHER ORDERED that Plaintiffs' Motion in Limine to exclude the testimony of Matt Richardson [Doc. 38] is DENIED.

THUS, DONE AND SIGNED in Chambers on this 15th day of February 2023.

_____
DAVID C. JOSEPH
UNITED STATES DISTRICT JUDGE